JACKSON *v.* STATE.

Opinion delivered June 5, 1922.

1. JURY—DISQUALIFICATION.—It was not error to refuse a new trial for disqualification of one of the petit jurors, though witnesses testified that one B. had stated that one of the jurors told him that he knew all about the case, and that they were going to convict defendant, where B. testified that one of the grand jurors had made such a statement to him.

2. SEDUCTION—INSTRUCTION AS TO CORROBORATION.—In a prosecution for seduction it was proper to instruct the jury that whether the testimony of the prosecuting witness has been corroborated by other testimony which, unconnected with that of the prosecuting witness and independent of her testimony, tends to establish the guilt of the defendant, was a question for the jury.

3. SEDUCTION—NECESSITY AND SUFFICIENCY OF CORROBORATION.—In a prosecution for seduction, where there is no evidence to corroborate the prosecutrix, the court should take the case from the jury; but where there is corroborating evidence, its weight is for the jury.

4. SEDUCTION—EVIDENCE—LETTERS.—In a prosecution for seduction, the admission in evidence of letters containing terms of affection and endearment, written by accused to the prosecutrix two or three years before the alleged offense, and while accused was

keeping company with the prosecutrix, was proper, as the letters tended to prove the love existing between the defendant and prosecutrix, which might subsequently be a basis for their engagement to marry.

5.  SEDUCTION—SUFFICIENCY OF EVIDENCE.—In a prosecution for seduction, evidence *held* sufficient to support a verdict of guilty.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*D. A. Bradham* and *Clay & Ball,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

HART, J. Wesley Jackson prosecutes an appeal to this court to reverse a judgment against him for the crime of seduction.

It is first insisted by counsel for the defendant that the judgment should be reversed on account of the disqualification of one of the jurors. This assignment of error is based upon the testimony of the sheriff and of an uncle of the defendant to the effect that Julius Beasley came into one of the offices in the courthouse, while the jury was deliberating upon its verdict in the present case, and stated that he had heard one of the jurors say that he knew all about the case and that they were going to send the defendant to the penitentiary.

Julius Beasley testified that he did state that he heard one of the jurors say that the defendant would be sent to the penitentiary, and started to explain his remarks, but the witness would not listen to him. Beasley testified that the qualifications of his remarks would have been that one of the grand jurors had told him that the boy was in a close place and that they (meaning the grand jury) had held the case open to hear his side of it, and that he did not see any chance for the boy.

The court overruled the motion for a new trial on this account, thereby finding that no member of the petit jury made the statements attributed to Beasley by the witnesses and that no prejudice had resulted to the defendant by reason of the disqualification of any member

of the petit jury. It cannot be said that the court abused its discretion and acted arbitrarily in the matter. Therefore this assignment of error is not well taken. *Hamer* v. *State,* 104 Ark. 606, and *Sneed* v. *State,* 143 Ark. 178.

It is next insisted that the court erred in instructing the jury that it was a question for it to say whether the testimony of the prosecuting witness had been corroborated by other testimony, which, unconnected with that of the prosecuting witness and independent of her testimony, tends to establish the guilt of the defendant, etc.

There was no error in giving this instruction. Of course, where there is no corroborating evidence, it is the duty of the court to take the case from the jury, because there could be no conviction unless the prosecuting witness is corroborated both as to the promise to marry and the fact of the intercourse. But where there is corroborating evidence, the weight of it is for the jury, and it is within the province of the jury to determine whether the evidence of the prosecuting witness has been sufficiently corroborated by the other evidence in the case, both as to the promise of marriage and the sexual intercourse. *Brooks* v. *State,* 126 Ark. 98.

It is next contended by counsel for the defendant that the court erred in allowing the introduction of certain letters of the defendant to the prosecuting witness.

Counsel for defendant specifically object to these letters because they were written during the first part of the year 1917, and the witness testified that the crime was committed in September, 1920.

With regard to the general objection to the introduction of the letters, it may be stated that the prosecuting witness testified that she knew the handwriting of the defendant and identified the letters as having been written by him. They were dated in January, March, and April, 1917, and one of them the prosecuting witness says was written during the first part of 1918. The prosecuting witness testified that the defendant kept company with her during the whole of the time from the first of

the year 1917 to the fall of 1920, when he seduced her. The letters of the defendant to the prosecuting witness are full of endearing terms to her, and each one assures her of his great love for her. He tells her that he will love her forever, and wishes for the same kind of affection from her. Under the circumstances these letters were competent as tending to prove the love existing between the prosecuting witness and the defendant which might subsequently be a basis for their engagement to marry.

Finally, it is insisted by counsel for the defendant that the evidence is not legally sufficient to support the verdict. The prosecuting witness testified in positive terms that she was 19 years of age on the 20th day of December, 1921, and that the defendant began coming to see her during the first of the year 1917 and continued to visit her regularly until the year 1921; that she loved the defendant and became engaged to be married to him; that in September, 1920, she had sexual intercourse with him in Bradley County, Ark., on their way home from camp meeting; that she yielded to the defendant because he promised to marry her, and that she relied on such promise; and that, as a result of their intercourse, which occurred several times, a baby was born unto her on the 19th of June, 1921.

The defendant was a witness for himself, and denied that he had ever been engaged to marry the prosecuting witness. His counsel insists that there is not sufficient corroborating evidence in the case.

In addition to the love letters referred to above, the testimony for the State shows that an uncle of the prosecuting witness went to a school in the neighborhood at which the defendant attended and told him that the prosecuting witness was pregnant and had said that the defendant had promised to marry her, and had requested the witness to ask the defendant what he was going to do about it. According to the testimony of the witness, when he broached the subject to the defendant, the latter

replied that he knew the prosecuting witness was in that fix. The witness asked the defendant what he was going to do about it, and he replied that he did not have any money with which to purchase a marriage license. The witness advised him to talk the matter over with his father, but the defendant replied that his father would not let him have the money. Finally it was agreed between them that the defendant should go home and get some other clothes and come back and marry the prosecuting witness. The defendant went home, but failed to return and marry the prosecuting witness as he had promised. On the other hand, he left the country and did not return for some time.

The father and mother of the prosecuting witness both testified that during all of this time the defendant had visited her regularly at their home.

According to the testimony of the uncle of the prosecuting witness, the above statements of the defendant were made to him voluntarily. It is true that the defendant was only twenty years of age, and testified that he acted under a sense of fear; but the court found otherwise by admitting his testimony to go before the jury. The jury, by convicting the defendant, found that his statements were voluntarily made. They were in the nature of a confession and were sufficient corroboration of the testimony of the prosecuting witness. *Lind* v. *State,* 137 Ark. 92; *Oakes* v. *State,* 135 Ark. 221; *Patrick* v. *State,* 135 Ark. 173; and *Smedley* v. *State,* 130 Ark. 149.

We find no prejudicial error in the record, and the judgment will be affirmed.